IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHERINE G. | § | |
| | § | |
| VS. | § | C.A. No. _____ |
| | § | |
| BLUE CROSS BLUE SHIELD OF | § | |
| TEXAS and DNV GL USA, INC. | § | |

**PLAINTIFF'S COMPLAINT**

KATHERINE G., Plaintiff, files this Complaint asserting causes of action in law and equity for relief against Blue Cross Blue Shield of Texas and DNV GL USA, Inc., Defendants.

**I.
PARTIES**

1. Plaintiff is a resident citizen of Houston, Texas. She brings this action to recover benefits for her treatment of a severe mental illness. Pursuant to Federal Rule 5.2, she is referenced as Katherine G.

2. Defendant Blue Cross Blue Shield of Texas ("BCBS") is a domestic or foreign corporation licensed to do business and doing business in the State of Texas. BCBS is a division of Health Care Service Corporation, a mutual legal reserve company. All communications between Plaintiff and BCBS and actions taken by BCBS, as alleged herein, were approved or ratified by Health Care Service Corporation. BCBS may be served through its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218, or wherever it may be found.

3. Defendant, DNV GL USA, Inc., ("Plan"), is a domestic or foreign company licensed to do business and doing business in the state of Texas, and can be served with process at 1400 Ravello Dr., Katy, TX, 77449, by serving its registered agent, C.T. Corporation, 1999 Bryan St, Suite 900, Dallas TX, 75201, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

4. This action against BCBS and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and are in this district.

6. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7. Plaintiff was at all relevant times a covered beneficiary under an employee welfare benefit plan created and administered by DNV GL USA, Inc. Plaintiff's father worked for DNV GL USA, Inc. and was a covered participant under the Plan. As a beneficiary, Plaintiff was entitled to health care benefits under the Plan.

8. DNV GL USA, Inc. was the employer and plan sponsor of the Plan.

9. BCBS was the insurer or excess insurer for the Plan.

## Medical History

10. Plaintiff suffers from a long and tragic history of serious mental illness. Katherine was born in Ben Taub Hospital the day after her birth mother received Methadone. She was born with strep in her spinal cord and spent the first 55 days of her life in NICU. Doctors feared that Katherine would be developmentally delayed.

11. When Katherine was 10 years old, her pediatrician put her on Adderall for undiagnosed ADHD. She was also diagnosed with auditory processing issues.

12. In January 2017, Dr. Lourdes Valdes referred Katherine to Westpark Springs for anxiety and erratic behavior. Before the start of the therapy, she had her first seizures at a party that night. She had more seizures and overdoses with emergency room visits. Further evaluation led to a diagnosis of attachment disorder and convergent disorder with convergent-seizures. Dr. Ron Swatzyna of the Tarnow Center referred her to Dr. Melissa Jones, a neurologist.

13. On February 8, 2017, Katherine was taken to Memorial Hermann ER following an intentional overdose with Clonazepam. She was tested for pseudo-seizures and then planned for testing at Houston Memorial Hermann. Before departure, she checked herself out of the hospital to ride with friends and smoke a cigarette. Outside, she had a seizure in the parking lot and was carried back into the emergency room. After recovering consciousness, she was transferred to another hospital by ambulance. During the trip, she had to be aspirated on the side of the freeway. After testing confirmed no neurological basis for the seizures, she returned home. In one week, she fainted three times: on the stairs, in the shower,

and in a chair. Each time, her parents took her to the emergency room to look for a possible concussion.

14. On February 28, 2017, Katherine reported to Dr. Valdes during weekly treatment that she had overdosed on Benadryl. Katherine's parents immediately took her to Methodist Hospital, where she was admitted and taken to a monitored room with security guard. She was transferred to Westpark Springs by police escort after it was determined that she was a risk to herself. She was released after several days of crisis therapy.

15. In May, Katherine received an occipital nerve injection to reduce her headaches. When the headaches were relieved and she was able to sleep, Katherine would resume dangerous impulsive behavior. After her seizures, she agreed to stop driving. Dr. Jones advised that Katherine needed residential care.

16. Later that month, Katherine cut her upper leg with a razor blade, then cut her other leg later that same week.

17. On May 4, 2017, Katherine was taken to West Houston Medical Center for seizures following drinking alcohol with a patient she met in therapy. Between seizures, she was unconscious. She was taken by ambulance, and she aspirated on the way.

### Treatment at Fulshear

18. Katherine entered Fulshear Ranch Academy on May 23, 2017, a facility near Houston that specializes in treating women under 24 years old. She underwent treatment for a year. Katherine left Fulshear on May 22, 2018.

19. Before Katherine was admitted to Fulshear, her mother called BCBS to confirm that the treatment would be covered. The BCBS representative promised that it would. True to its word, BCBS initially paid close to $47,000 for the treatment.

20. After successfully completing several levels and many treatments, her progress stalled. Her therapists noted that she had the executive functioning of a preadolescent. Her parents made the difficult decision to force Katherine to live on her own. Eventually she moved to the Beaumont area, where she now supports herself and has worked a variety of jobs.

21. However, BCBS went back on its promise and denied coverage for the treatment. Its denial was based on only one ground: it believed Fulshear was not licensed to provide medical care. It then pulled the previous $47,000 payment.

22. Katherine's mother filed an appeal on February 22, 2019. With the appeal, she provided evidence that Fulshear was licensed to provide medical care. She also provided evidence that Katherine's treatment was medically necessary.

23. BCBS denied the appeal by letter dated June 13, 2019.

24. On April 13, 2020, Plaintiff submitted additional evidence in support of her claim. Among other things, she provided evidence that BCBS ignored her medical condition and spent all of its time trying to determine if Fulshear Academy was licensed to provide medical care. She also provided evidence that Fulshear was licensed to provide medical care and that her treatment at Fulshear was medically necessary.

25. The additional evidence was provided pursuant to Fifth Circuit case authority that obligated BCBS to review the additional information. ("The administrative record

consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). She requested that BCBS review those records pursuant to its legal obligation and re-evaluate her claim.

26. The evidence that Plaintiff sent in April 2020 was submitted before filing this lawsuit and in a manner that gave BCBS a fair opportunity to consider it.

27. BCBS totally ignored the additional medical evidence. On May 8, it sent a letter noting that its previous appeal denial was final.

28. Katherine finished the Fulshear Transition Program on July 18, 2019. She was awarded a completion certificate, and it was a milestone day for both her and the family. On January 24, 2020, she was invited back to Fulshear to tell her story to residents.

29. Due to BCBS's denial of the claim, Katherine and her family were forced to personally pay more than $157,000 to Fulshear. This money should have rightfully been paid by BCBS.

30. Having exhausted her administrative remedies, Plaintiff brings this action to recover the benefits promised in the Plan and Policy.

**IV.
CLAIMS & CAUSES OF ACTION**

31. The DNV GL USA, Inc. Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq*. DNV GL USA, Inc. is the plan sponsor and Plan Administrator. BCBS is the insurer or excess insurer for the Plan.

32. As Plan fiduciaries, BCBS and the Plan are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. They are also obligated as fiduciaries to conduct their investigation of a claim in a fair, objective and evenhanded manner.

33. BCBS's adjustment of Plaintiff's claim was instead biased and outcome oriented. This was partly reflected by its denial of Plaintiff's claim, even after being presented with evidence that her claim was covered and that her treatment was medically necessary. It was also reflected in BCBS's exclusive focus on determining if Fulshear was licensed to provide medical care, at the detriment of actually reviewing the merits of the claim. It was also reflected in BCBS's repeated use of incorrect and inappropriate guidelines for Plaintiff's medical condition or pursuant to Plan requirements.

34. BCBS's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

35. BCBS's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which BCBS based its denial decision was ambiguous. The ambiguous nature of those terms requires those terms be construed against BCBS and the Plan and in favor of coverage for Plaintiff.

36. BCBS's denial was made without substantial supporting evidence. Its decision to deny Plaintiff's claim was instead based upon rank speculation and guesswork. BCBS's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

37. At all material times, BCBS acted on behalf of the Plan and in its own capacity as the Insurer and Claims Administrator.

38. BCBS's denial of Plaintiff's claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Plaintiff to the health insurance policy benefits to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Plaintiff now sues.

## V.
## STANDARD OF REVIEW

39. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

40. The Plan or Policy may contain a discretionary clause or language BCBS may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. BCBS's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

41. If discretion applies, the Court should afford BCBS less deference in light of its financial conflict of interest. BCBS's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Plaintiff's claim and as the potential payor of that claim.

42. BCBS's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. BCBS's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

43. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other BCBS policyholders and claimants.

44. In light of its financial conflict, BCBS should be given little or no discretion in its claim decision.

45. Alternatively, the standard of review of this claim should be *de novo,* affording BCBS no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

46. The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Plaintiff's claim and BCBS's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo*.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

47. Plaintiff requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

48. The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Plaintiff thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

49. Plaintiff seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Katherine G., Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Defendants, and issue judgment against Defendant as follows:

    A.    That Defendants pay to Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

    B.    That Defendants pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C. All such other relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

By: /s/ Amar Raval
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF